*SEALED BY ORDER OF COURT*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

### THE UNITED STATES OF AMERICA

### vs

### JOEY STANTON DODSON

FILED
DEC 19 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## INDICTMENT

CR 19 00703 BLF VKD

| | |
|---|---|
| COUNTS 1-4: | 18 U.S.C. § 1343 - Wire Fraud |
| COUNTS 5-7: | 18 U.S.C. § 1341 - Mail Fraud |
| COUNTS 8-10: | 18 U.S.C. §§ 1957 and 2 - Monetary Transactions in Criminally Derived Property |

*A true bill.*

_____
*Foreperson*

Filed in open court this __19__ day of __December__ A.D. 201__9__.

_____
*United States Magistrate Judge*

Bail. $ No bail arrest warrant







DAVID L. ANDERSON (CABN 149604)
United States Attorney

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 19 00703 BLF |
| Plaintiff, | VIOLATIONS: |
| v. | 18 U.S.C. § 1343 – Wire Fraud; |
| | 18 U.S.C. § 1341 – Mail Fraud; |
| JOEY STANTON DODSON, | 18 U.S.C. § 1957 – Transactional Money Laundering; |
| | 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 28 U.S.C. |
| Defendant. | § 2461(c) – Forfeiture Allegations |
| | SAN JOSE VENUE |

# INDICTMENT

The Grand Jury charges that, at all relevant times:

<u>Introductory Allegations</u>

1. The defendant, Joey Stanton Dodson ("DODSON"), was a California resident who held himself out as the executive chairman and managing partner of Citadel Energy. Citadel Energy purported to provide fluid-management services to oil and gas companies in North Dakota. Citadel Energy was comprised primarily of three limited partnerships, described more fully below, and several limited liability companies created to manage the limited partnerships and operate their assets. Prior to Citadel Energy, DODSON held himself out as the chairman of Duke Equity Partners.

2. Fort Berthold Water Partners, L.P. ("FBWP") was a Delaware limited partnership formed by DODSON on or about November 2, 2012, for the purpose of investing in the drilling, completion, and infrastructure assets of up to four water wells on the Fort Berthold Indian Reservation in western

INDICTMENT

1  North Dakota. DODSON raised approximately $1,700,000 through the sale of limited partnership
2  interests in FBWP between in or about November 2012 and September 2013.

3      3.    Citadel Watford City Disposal Partners, L.P. ("CWCDP") was a Delaware limited
4  partnership formed by DODSON on or about September 13, 2013, for the purpose of investing in the
5  drilling, completion, and infrastructure assets of Pembroke SWD, LLC, which would own and operate a
6  salt-water disposal well in McKenzie County, North Dakota. DODSON raised approximately
7  $6,800,000 through the sale of limited partnership interests in CWCDP between in or about October
8  2013 and December 2014.

9      4.    H20 Partners, L.P. ("H20 Partners") was a Delaware limited partnership formed by
10 DODSON on or about, July 29, 2014, for the purpose of investing in the acquisition of water rights to
11 more than 127 surface-water well sources throughout North Dakota. DODSON raised approximately
12 $7,000,000 through the sale of limited partnership interests in H20 Partners between in or about August
13 2014 and December 2014.

14     5.    Private Equity Firm A was an investment firm located in Washington, D.C., that, among
15 other things, provided capital funding for middle-market and growth companies.

16     6.    Duke Equity Partners was a California corporation formed by DODSON on or about
17 September 24, 2001, to raise funds from investors under a series of entities that included, but was not
18 limited to, Duke Special Opportunity Fund, Duke Industries, Duke Aerospace, Duke Greentech, and
19 Duke Realty (collectively, "Duke Equity"). From at least as early as 2011, DODSON began entering
20 into repurchase agreements with some of his Duke Equity investors, whereby he agreed to repay them at
21 least a portion of their initial investment.

The Scheme to Defraud

23     7.    Beginning at least as early as November 2012 and continuing until approximately May
24 2015, the defendant, DODSON, in the Northern District of California, and elsewhere, aided and abetted
25 by others known and unknown to the Grand Jury, knowingly and willfully, and with the intent to
26 defraud, devised and intended to devise a scheme to defraud investors in three limited partnerships
27 affiliated with Citadel Energy, and to obtain money and property by means of materially false and
28 fraudulent pretenses, representations, and promises, as further described below.

INDICTMENT                                        2

## The Purpose of the Scheme to Defraud

8. The purpose of the scheme to defraud was to: (a) divert investor funds for DODSON's own personal benefit; (b) divert investor funds to cover the costs and expenses associated with separate and distinct investments; and (c) conceal the true financial condition of Citadel Energy, including its limited partnerships, to allow DODSON to continue soliciting investor funds and to avoid detection of the scheme to defraud.

## The Manner and Means of the Scheme to Defraud

9. DODSON used a combination of methods to carry out this scheme to defraud, including, but not limited to, making and causing to be made materially false and misleading misrepresentations to prospective and current investors about: (a) his compensation; (b) the use of investor funds; and (c) the status of a potential acquisition by Private Equity Firm A, as further detailed below:

   a. <u>DODSON's compensation:</u> DODSON represented to investors in writing that he would not receive compensation other than as identified in each Private Placement Memorandum ("PPM") issued in connection with the respective limited partnership offerings. In truth and fact, DODSON took compensation far in excess of the amounts identified in the PPMs. Beginning in or about November 2012 and continuing until in or about May 2015, DODSON misappropriated more than $1,300,000 of investor funds, which he used to pay for numerous unauthorized expenditures, including, but not limited to, the repayment of former Duke Equity investors, gambling activity, his personal rent in Los Angeles, and his wife's BMW.

   b. <u>Use of investor funds:</u> DODSON represented to investors both orally and in writing that limited partner investor funds would be used for the costs and expenses associated with the specific limited partnership for which they were raised. The PPM for each respective limited partnership contained explicit language identifying how investor funds would be used, namely, that the funds would be used to invest in the drilling, construction, acquisition, or operation of a specific asset associated with each partnership. In truth and fact, DODSON commingled investor funds from the various partnerships in various accounts and diverted funds for projects and purposes other

INDICTMENT                                     3

than those identified in the offering materials, including, but not limited to, repaying former Duke Equity investors and paying for the costs and expenses of unrelated partnerships. For example, while the H2O Partners' PPM stated that the investor funds would be used to acquire and exploit water rights for the exclusive benefit of the partnership, between approximately August 2014 and December 2014, DODSON misappropriated and diverted approximately $1,000,000 in H2O Partner funds to CWCDP for unauthorized purposes.

    c. <u>Acquisition of Citadel Energy by Private Equity Firm A</u>: Beginning on or about December 20, 2014, DODSON represented to investors both orally and in writing that an acquisition of Citadel Energy, to include H20 Partners, by Private Equity Firm A was at, or near, completion and "moving at a faster than normal pace to close." In truth and fact, on or about December 17, 2014, Private Equity Firm A had told DODSON that it had lost confidence in Citadel Energy's management, had ceased conducting due diligence, and would not move forward with the acquisition unless Citadel Energy could restore its confidence. Based on DODSON's false and misleading statements, two investors invested a total of $250,000 in H20 Partners.

10. It was further part of the scheme and artifice to defraud that DODSON exercised total control over Citadel Energy's financial information, including, but not limited to, the deposit and movement of investor funds and dissemination of financial information, in order to, among other things, facilitate his misappropriation of investor funds and conceal the true financial condition of the partnerships from the investors and others. For example, on or about July 3, 2014, following the deposit of investor funds into a CWCDP Wells Fargo account ending in 4127 controlled by DODSON, DODSON caused funds to be dispersed amongst multiple Citadel Energy accounts and then caused the following wire transfers to be issued:

    a. an approximately $20,000 wire from a Wells Fargo account ending in 2928 to repay a former Duke Equity investor, J.B.;

    b. an approximately $4,000 wire from a Wells Fargo account ending in 1586 to repay a former Duke Equity investor, L.H.;

      c. an approximately $3,000 wire from a Wells Fargo account ending in 4127 to DODSON's personal account;

      d. an approximately $2,500 wire from a Wells Fargo account ending in 2928 to DODSON's wife's personal account; and

      e. an approximately $2,000 wire from a Wells Fargo account ending in 2928 to DODSON's mother's personal account.

11. It was further part of the scheme and artifice to defraud that DODSON claimed to have successfully managed investments as part of Duke Equity, while concealing negative information regarding his management of these investments, including, but not limited to, complaints by Duke Equity investors regarding the lack of timely financial information and financial accountability, DODSON's execution of agreements to repurchase certain investors' interests in Duke Equity investments, and the existence of a lawsuit filed by Duke Equity investor K.R., on or about May 2011, related to his investment in Duke Equity, which DODSON settled.

12. In total, as part of and in furtherance of his scheme to defraud, DODSON raised approximately $15,000,000 from 50 investors.

**COUNTS ONE THROUGH FOUR:**    18 U.S.C. § 1343 (Wire Fraud)

13. Paragraphs 1 through 12 of this Indictment are re-alleged and incorporated by reference as if fully set forth here.

14. From at least in or around November 2012 through at least in or around May 2015, in the Northern District of California, and elsewhere, defendant,

                              JOEY STANTON DODSON,

aided and abetted by others known and unknown to the Grand Jury, on or about the dates specified as to each count below, did knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signals, pictures, and sounds, for the purpose of executing the scheme and artifice discussed in paragraphs 1 through 12, as more particularly described

INDICTMENT                                      5

below:

| Count | Approximate Date | Description of Interstate Wire Communication |
|---|---|---|
| 1 | December 20, 2014 | An email sent from DODSON to victim-investor S.S., who was located in the Northern District of California, soliciting an investment in H20 Partners, which passed through AOL's servers in Virginia. |
| 2 | December 20, 2014 | An email sent from DODSON to victim-investor D.H., who was located in the Northern District of California, soliciting an investment in H20 Partners, which passed through AOL's servers in Virginia. |
| 3 | December 23, 2014 | A wire transfer of $100,000, initiated in the Northern District of California, on behalf of victim-investor C.D. to an H20 Partners Wells Fargo account ending in 5384, which was processed through Wells Fargo's servers in Alabama. |
| 4 | December 24, 2014 | A wire transfer of $150,000, initiated in the Northern District of California, on behalf of victim-investor D.H. to an H20 Partners Wells Fargo account ending in 5384, which was processed through Wells Fargo's servers in Alabama. |

All in violation of Title 18, United States Code, Section 1343.

<u>COUNTS FIVE THROUGH SEVEN</u>:     18 U.S.C. § 1341 (Mail Fraud)

15.   Paragraphs 1 through 12 of this Indictment are re-alleged and incorporated by reference as if fully set forth here.

16.   From at least in or around November 2012 through at least in or around May 2015, in the Northern District of California, and elsewhere, defendant,

JOEY STANTON DODSON,

aided and abetted by others known and unknown to the Grand Jury, on or about the dates specified as to each count below, did knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, place and cause to be placed in a Post Office or authorized depository for mail a thing to be sent and delivered by the Postal Service or any private or commercial interstate carrier, to wit: Federal Express, for the purpose of executing the scheme and artifice discussed in paragraphs 1 through 12, the following items, as more particularly described below:

INDICTMENT                                              6

| Count | Approximate Date | Description of Mailing |
|---|---|---|
| 5 | January 2, 2015 | Documents related to victim-investor D.H.'s investment in H20 Partners mailed via Federal Express from D.H. in Los Altos, California, to DODSON in Beverly Hills, California. |
| 6 | February 3, 2015 | Documents related to victim-investor C.D.'s investment in H20 Partners mailed via Federal Express on behalf of DODSON from Beverly Hills, California, to C.D. in Los Gatos, California. |
| 7 | February 4, 2015 | Documents related to victim-investor D.H.'s investment in H20 Partners mailed via Federal Express on behalf of DODSON from Beverly Hills, California, to D.H. in Los Altos, California. |

All in violation of Title 18, United States Code, Section 1341.

<u>COUNTS EIGHT THROUGH TEN:</u>        18 U.S.C. §§ 1957 (Monetary Transactions in Criminally Derived Property)

17.   Paragraphs 1 through 12, 14, and 16 of this Indictment are re-alleged and incorporated as if fully set forth here.

18.   On or about the dates specified as to each count below, in the Northern District of California, and elsewhere, the defendant,

JOEY STANTON DODSON,

aided and abetted by others known and unknown to the Grand Jury, did knowingly engage in monetary transactions within the United States, that is the deposit, withdrawal, transfer, and exchange of funds by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of Title 18, United States Code, Section 1343, and Mail Fraud in violation of Title 18, United States Code, Section 1341, as more particularly described below:

| Count | Approximate Date | Description of Monetary Transaction |
|---|---|---|
| 8 | December 26, 2014 | A wire transfer of $54,000 from H2O Partners Wells Fargo account ending in 5384 controlled by DODSON to Citadel Energy Services 1st International Bank & Trust account ending in 0198 controlled by DODSON. |

INDICTMENT                                            7

| 9 | December 31, 2014 | An online bank transfer of $18,000 from H2O Partners Wells Fargo account ending in 5384 controlled by DODSON to CWCDP Wells Fargo account ending in 4127 controlled by DODSON. |
| 10 | December 31, 2014 | An online bank transfer of $40,000 from H2O Partners Wells Fargo account ending in 5384 controlled by DODSON to Citadel Energy Services Wells Fargo account ending in 2928 controlled by DODSON. |

All in violation of Title 18, United States Code, Sections 1957.

<u>FRAUD FORFEITURE ALLEGATION:</u>     18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)
(Forfeiture of Wire and Mail Fraud Proceeds)

19. The allegations contained in this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

20. Upon conviction for any of the offenses set forth in Counts 1 through 7, the defendant,

JOEY STANTON DODSON,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations, including but not limited to the following: a sum of money equal to $15,000,000 in United States currency, which represents the amount of proceeds obtained as a result of the offenses charged in Counts 1 through 7.

21. If any of the property described in paragraph 20, as a result of any act or omission of the defendant:

    a. cannot be located upon exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

INDICTMENT                                     8

22. All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(b), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

<u>MONEY LAUNDERING FORFEITURE ALLEGATION</u>: 18 U.S.C. § 982(a)(1) (Forfeiture of Money Laundering Proceeds)

23. The allegations contained in this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

24. Upon conviction for any of the offenses set forth in Counts 8 through 10, the defendant,

JOEY STANTON DODSON,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following: a sum of money equal to the total value of property involved in the commission of said offenses.

25. If any of the property described in paragraph 24, as a result of any act or omission of the defendant:

    a. cannot be located upon exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

INDICTMENT                                    9

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), Title 28, United States Code, Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

DATED:                                                      A TRUE BILL.

12/19/19

/s/ FOREPERSON

DAVID L. ANDERSON
United States Attorney

ROBERT A. ZINK
Chief, Fraud Section, Criminal Division

/s/
JASON M. COVERT
Trial Attorney, Fraud Section, Criminal Division

INDICTMENT                                        10

AO 257 (Rev. 6/78)

**SEALED BY ORDER OF COURT**

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT  ☐ SUPERSEDING

---- OFFENSE CHARGED ----

Counts 1-4: 18 U.S.C. § 1343 - Wire Fraud

Counts 5-7: 18 U.S.C. § 1341 - Mail Fraud

Counts 8-10: 18 U.S.C. §§ 1957 and 2 - Monetary Transactions in Criminally Derived Property

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: Counts 1-4 and 5-7: Maximum 20 years imprisonment, $250,000 fine, 3 years of supervised release, $100 special assessment fee

Counts 8-10: 10 years imprisonment, $250,000 fine, 3 years of supervised release, $100 special assessment fee

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

---- DEFENDANT - U.S ----

▶ Joey Stanton Dodson

DISTRICT COURT NUMBER

CR 19 00703 BLF

**FILED DEC 19 2019**
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE
VKD

---- DEFENDANT ----

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☒ On this charge
5) ☐ On another conviction  } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No  } If "Yes" give date filed

DATE OF ARREST ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year

---- PROCEEDING ----

Name of Complaintant Agency, or Person (& Title, if any)

FBI S/A Chad Warren

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form    DAVID L. ANDERSON

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    Jason Covert, Trial Attorney, DC

☐ This report amends AO 257 previously submitted

---- ADDITIONAL INFORMATION OR COMMENTS ----

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount: None

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

\* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                    Before Judge:

Comments: